Stanard, J.
The only question that the counsel for the appellant has propounded for the consideration and decision of this court, is whether the decree appealed from, so far as it establishes the title of the appellee to interest on the arrearages of the annuity antecedent to the time of the decree, be correct. The adequacy of the estate to pay the principal of those arrearages, or its liability therefor, is not here questioned. To the decision of this question so propounded, I deem it unnecessary to pursue the elaborate and able investigation made in the argument, of the cases adjudicating the claim to interest on the arrears of annuities of various classes, or to ascertain the nice shades of distinction which have determined the allowance or disallowance of interest on the arrears; being of opinion that no adjudication, even that most favourable to the claim to interest, would justify its allowance in this case.
The annuity here was payable out of the rents of real, or interest or profits of personal estate, that the testator directed should be set apart by the,executors to raise, in rents or interest, a sum adequate to pay it. The case ascertains that the rents and profits of the whole estate, during the greater part of the time, were received and wasted by the executors, who wasted also a large amount of the principal of the real and personal estate; that such rents and interest have not come to the hands of the defendant, on whom the claim is now made for the principal and interest of the annuity ; and that the claim to interest, if sustained, must *533 be satisfied by charging it on the rents of real and interest of personal estate, accruing long since the death of the annuitant.
That such claim cannot be sustained, is made manifest by adverting to the position it would occupy, on the hypothesis that the executors had, as the will directed, set apart the rents of real estate adequate to raise the annuity, and disposed of the residue of the estate by partition thereof among the devisees. Had this been done, it would have been the duty of the executors to receive the rents and pay them over to the annuitants. If the executors were in default in paying them over, they might have been responsible for interest ; but that responsibility could in no wise have been made a charge on the principal of the estate yielding the rent,—much less on the profits of the estate in the hands of the devisees, and still less on the principal of that estate. On this hypothesis, the devisees, and the rents and profits or principal of the estate devised to them, would not have been liable to this claim, though they received the profits of the residue of the estate. Can that liability exist, when such rents have not been received by them, but have been wasted by irresponsible executors ?
Brooke, J.
The general rule is that annuities do not bear interest, but there are many exceptions, which, however, it is not necessary to state, as I think the case before us cannot come within any of them. It would be to go beyond the terms of the will, to charge the estate with more than the sum specified to be raised by the executors, namely, 500 dollars annually to each of the annuitants. The claim in the bill being against the estate of Richard Adams, I think the decree ought to be reversed as to the interest.
Tucker, P.
If this were a demand against the executors of Richard Adams deceased, there could be no *534 question about their liability to interest on the annuities. The estate was abundant, and the requisite fund should have been at once set apart. The annuities should have been paid at the end of each year, and on failure of payment, the executors should have been charged with interest—payable, however, out of their own pockets, and not out of the estate; for that could not be charged with it. For where an executor who is fullhanded fails to pay creditors, so that interest accumulates, the payment of such interest is a devastavit, and it can therefore never form a proper charge against the estate. Toller on Executors, p. 426. 2 Levinz 40. The case of interest paid to legatees, where the situation of the estate was not the cause of the delay of payment, stands upon the like reason and must be governed by a like rule.
Here, however, the executors are insolvent, and the attempt is to charge the interest upon the residuary estate. In deciding this question, it is not necessary to settle a principle about which lord Eldon seems to have had great difficulty in Ex parte Chadwin, 3 Swanst. 380. and which he seems to have considered yet open; 2 Williams on Ex’ors, 838. In that case there was a question between general and residuary legatees, whether, in the case of the executor’s waste of the estate, and his hopeless insolvency,-the general legacies should abate. The general legatees had received interest from the executor, and this dealing with him, his lordship held, was sufficient to charge them with their proportion of the loss. Dyose v. Dyose, 1 P. Wms. 306. (questioned in 1 Brown’s C. R. 472. and 2 Cox’s C. R. 184.) was cited. Perhaps the true rule in such cases is, that as no one can have a right to expect another to attend to his interest, the residuary legatee cannot com plain of the general legatee’s delay, since all that is incumbent on him is to see that enough is left in the executor’s hands to pay himself, without looking beyond to the interest of the residuary. The residuaries here, however, are not contesting the payment of the annuities *535 themselves, but only of the interest; and this question, I think, may be decided upon the case itself, without reference to authority.
The testator, by his will, carved out of the residuum of his estate a limited capital, sufficient to produce a certain and limited sum for a certain and limited time. This court has no power to enlarge the capital, the sum to be raised, or the time. Now, as the sum to be raised annually was only 500 dollars for each, and the time for which it was to be raised was limited to the lives of the annuitants, no more than that sum, for as many years as she should live, can be raised for either annuitant. But that sum will only pay the principal, and not a cent of interest. The interest, therefore, cannot be allowed; for in allowing it, we should exceed the limits which the testator has imposed.
This opinion may perhaps be more clearly illustrated, by supposing that all the annuitants were now in full life, and all were claiming the principal and interest of their annuities since the year 1818. To give them this, the court would find it necessary to set apart a much larger capital than would be sufficient to produce 2000 dollars per annum for each year since the death of the testator. There must be a farther capital set apart to raise an average of 1440 dollars per annum for the twenty years that have elapsed, that being the average interest each year for the whole time. This would be very greatly to extend the limits which the testator had set to this charge upon the residuum. It could not therefore be countenanced, and probably would not be insisted on. But the plaintiff’s demand is the same in principle, although inferior in amount. It ought therefore to be rejected, and the decree which allowed it should be reversed.
Decree reversed, for so much as allows interest on the annuity, and for the residue thereof affirmed.